## HUTCHENS *v.* STATE, EX REL., RHAMEY.

[No. 11,995.   Filed January 28, 1925.]

1. WITNESSES.—*Question to impeaching witness must be identical as to time, place and substance of previous conversation.*— In impeaching a witness by showing that he has made statements out of court contrary to his testimony, the question to the impeaching witness must be identical as to the time, place and substance of the conversation or statement claimed to have been made by the witness sought to be impeached, and an objection to a question as to a conversation in the presence of the impeaching witness in December was properly sustained where the only question asked the witness sought to be impeached related to a conversation in the following June. p. 411.

2. TRIAL.—*Error in excluding evidence cured by subsequent admission of evidence.*—The error, if any, in excluding evidence was cured by the subsequent admission of the same evidence.   p. 413.

3. WITNESSES.—*Exclusion of answer to impeaching question not error where no foundation for impeachment had been laid.*— There was no error in refusing to permit a witness to answer an impeaching question where no foundation for impeachment had been laid by asking the proper question of the witness sought to be impeached.   p. 413.

From Jay Circuit Court; *Roscoe D. Wheat,* Judge.

State, upon the relation of Ruth E. Rhamey against Russell Hutchens. From a judgment against the defendant, he appeals. *Affirmed.*

*Jacob F. Denny,* for appellant.

*Austin H. Williamson* and *George T. Whitaker,* for appellee.

McMAHAN, J.—This cause was heretofore affirmed without an opinion. We then believed and still believe that the questions involved are not of sufficient importance to require an extended opinion, if any. While the statute wisely authorizes this court to affirm a case without writing an opinion, it is not our purpose to arbitrarily make use of the power nor to exercise it at all, except when justified by the character of the questions involved. But when it clearly appears that no question is properly presented for our consideration, when the questions involved relate to some question of practice which has been decided so often that it is no longer an open question, where the questions are elementary and not of public interest or of sufficient importance to justify the preparation and publication of an opinion, or where, perchance, the appellant's attorney has, for some reason, so failed in the preparation of his record or in the preparation of his brief in this court that no question is presented for our decision, we shall, in the future, as we have in the past, exercise our discretion in the matter of writing an opinion, even though it be for no other purpose than to protect an appellant's attorney.

The great number and length of published opinions is a serious problem and one that merits the serious consideration of bench and bar. The question of shorter and fewer opinions was raised to the dignity of a national problem in 1918, when the American Bar

Association passed a resolution directing that a memorial be presented to the courts suggesting fewer and shorter opinions and suggesting as one of the four methods of relief, more *per curiam* opinions. Am. Bar Association Journal IV, p. 15, 1918.

Mr. Justice Story in 1831, in speaking of the great number of law reports in this country at that time and comparing the number then published with the five or six volumes in existence when he began the study of the law in 1801, said: "Now our shelves are crowded with hundreds." Mr. High, in 1882, refers to the publication of opinions as a "heavy and rapidly growing tax," and that the outlook for the future was "far from encouraging," because of the elaborate essays and prolix opinions of the judges, which he severely condemned. 16 Am. L. Rev. 434.

See, also, "The Welter of Reports and Court Opinions" by Judge Thornton, Proceedings Indiana State Bar Association 1919, 90 .Cent. L. J. 316.

Written opinions in cases of no more importance than the one now under consideration are mere judicial rubbish, their only use being to fill up the reports and encumber the already groaning shelves in the lawyers' library and to help keep the paper mills running.

Appellant's counsel, however, in support of a petition for rehearing, says he is curious to know by what line of reasoning what to him seems to be a radically wrong result was reached. Being desirous of satisfying the curiosity of counsel, we have granted a rehearing and will undertake to accomplish the task, however difficult it may be.

Appellant was adjudged the father of relatrix's bastard child. He appeals and assigns as error the overruling of his motion for a new trial. The particular specifications in the motion urged as·reasons for reversal are: (1) That the verdict of the jury is not

sustained by the evidence, and (2) that the court erred in excluding certain evidence.

Appellant makes no attempt to support the first specification. Indeed, in that part of his brief devoted to argument, he practically concedes that there is sufficient evidence, if believed, to sustain the verdict. The relatrix testified that appellant had had sexual intercourse with her at a time when her child could have been begotten and that he was its father. He denied ever having had intercourse with her. The jury believed her and disbelieved him. There is no need to say more on this subject, since appellant admits there is some evidence to sustain the verdict.

Appellant called one Glen Wilhelm as a witness: He testified that he knew the relatrix and that he was not the father of her child. Appellant's counsel then

1. asked him the following question: "Calling your attention to a time at his father's residence about a week before the arrest of Russell Hutchens on this bastardy charge, if you didn't go out to the house of Russell Hutchens in company with Harley Millett and ask to borrow one hundred dollars of him—that you had got Ruth Rhamey into trouble?" This question was answered in the negative. Harley Millett was later called as a witness on behalf of appellant, and, in the course of his examination, testified as follows: "I drove Wilhelm out to see Russell Hutchens twice. The first time was along the last of the year, the second time was some time in January. He asked me to take him out there. This was in December, 1922, and January, 1923." He was then asked the following questions: (1) "I will ask you to tell the jury on that occasion of your going to Hutchens' place the first time whether or not Glen Wilhelm said to you that he had gotten the Rhamey girl into trouble and that he wanted you to take him out to Hutchens' to see if he couldn't borrow

$100 to get out of trouble." (2) "I will ask you to tell the jury, if while at the Hutchens home as you have indicated, if Glen Wilhelm didn't ask Russell Hutchens to loan him one hundred dollars and stated at that time that Wilhelm had gotten the Rhamey girl into trouble and that he wanted the money for that purpose?" (3) "You may state to the jury at the time that Mr. Wilhelm and you were out to see Mr. Hutchens as you have detailed you heard Mr. Wilhelm say to Mr. Hutchens that he, Wilhelm, had gotten Ruth Rhamey in family way?" Appellee objected to each of these questions on the ground that the proper foundation had not been laid. Proper offers to prove were made, and the objections sustained.

Our Supreme Court, in speaking as to the form and substance of an impeaching question said: "While we do not insist that the question to the impeaching witness should be in the exact words of the question asked of the witness sought to be impeached, we do hold that as to time, place, and substance of the conversation or statement, it should be identical, and should be so framed as to admit of a negative or an affirmative answer." *Pence* v. *Waugh* (1893), 135 Ind. 156.

Appellant in his brief has wholly failed to set out the question asked the witness Wilhelm and which was the foundation of the right of impeachment. Neither has he referred us to the place in the record where it can be found. We have, however, searched the record, and find that the only question asked the witness Wilhelm related to a conversation purporting to have been had about a week before the arrest of appellant. The record shows that appellant was arrested June 14, 1923, and that the conversation Mr. Wilhelm was asked about took place about June 7, 1923. The questions asked the impeaching witness, Millett, to which the objections were sustained related to a conversation that took place

either the last week in December, 1922, or the first of January, 1923. The objections to the three questions above set out were correctly sustained.

The next contention of appellant is that the court erred in refusing to permit him to answer a certain question while testifying as a witness in his own behalf, the purpose of which was to impeach the witness Wilhelm. The objection to this question was sustained because the proper foundation had not been laid. The witness, Wilhelm, was then recalled and the foundation properly laid, after which the defendant was allowed to answer the impeaching question. The error if any in refusing to allow him to answer the first question was cured.

Appellant also contends that the court erred in refusing to permit his witness, Frank Fowler, to answer an impeaching question. Appellant has wholly failed, in fact, has made no attempt, to show that any foundation was laid for the impeaching question. Notwithstanding appellant's failure in this regard, we have made diligent search of the record, and find no attempt was made to lay any foundation for the impeaching question. We would have been justified in holding that no question was presented for our consideration because of appellant's failure to set out in his brief the place in the record where the foundation for the impeaching questions could be found.

Judgment affirmed.

Nichols, J., not participating.