[Civ. No. 3125. Third Appellate District.—January 22, 1927.]

## C. R. NUETZEL, Appellant, v. JULIA MACKIE, Respondent.

[1] PROMISSORY NOTES — INDORSEMENT — LIABILITY OF INDORSER OF NON-NEGOTIABLE NOTE — INTENT. — The liability of a regular indorser of a non-negotiable note to his indorsee depends upon the question of his intent, as evidenced by the form of the indorsement.

[2] ID.—INDORSEMENT TO "ORDER" OR "BEARER"—LIABILITY TO SUBSEQUENT HOLDERS.—Although an instrument as originally made is not negotiable for lack of words of negotiability, yet if it is indorsed to "order" or "bearer," it becomes as between the indorser and subsequent holders a negotiable instrument, and subject to the principles and usages of instruments of that character.

[3] ID.—ATTEMPT BY INTERMEDIATE INDORSEE TO LIMIT LIABILITY— INDORSEMENT "WITHOUT RECOURSE."—Where any apt words are used, such as give negotiability to an instrument, the payee will be held liable to an indorsee of his indorsee, even though an intermediate indorsee may have limited his liability by using the words "without recourse."

---

1. See 19 Cal. Jur. 885.
2. See 3 R. C. L. 876.
3. Undertaking of one who indorses note without recourse, note, 2 A. L. R. 216.

[4] ID. — INDORSEMENT IN BLANK — SECTION 3116, CIVIL CODE — CONSTRUCTION.—Secton 3116 of the Civil Code, which provides that the holder may convert a blank indorsement into a special indorsement by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement, is confined specifically to the character of the contract upon which the indorsement is to be made, and if that contract is a negotiable instrument, the holder thereof may insert the necessary words above a blank indorsement to make it a special indorsement, but, if it is not consistent with the character of the contract, no such right is given by the section.

[5] ID. — INDORSEE OF NON-NEGOTIABLE NOTE — ACTION TO ENFORCE LIABILITY — SECTION 726, CODE OF CIVIL PROCEDURE — MORTGAGES. Section 726 of the Code of Civil Procedure has no application where the action seeks to enforce the liability of an indorsee, as that section is directed to the benefit of the mortgagor, and has no relevancy to independent contracts of other parties, and an action by an indorsee of the payee's indorsee of a non-negotiable note secured by a mortgage on real property is not barred thereby.

---

(1) 8 C. J., p. 57, n. 60, p. 58, n. 94, 95.   (2) 8 C. J., p. 57, n. 63.
(3) 8 C. J., p. 59, n. 97, p. 152, n. 8.   (4) 8 C. J., p. 364, n. 55 New.
(5) 41 C. J., p. 656, n. 57.

APPEAL from a judgment of the Superior Court of Los Angeles County. William H. Ellis, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

James S. Jarrott for Appellant.

Walter E. Burke for Respondent.

PLUMMER, J.—On the third day of April, 1920, B. R. Smith and wife executed and delivered to the defendant, Julia Mackie, a promissory note for three thousand dollars. This note was secured by mortgage upon certain real property in San Bernardino County, state of California. On the thirtieth day of June, 1920, Julia Mackie transferred said note to the Globe Land Company, a corporation, by a written indorsement on the back thereof in the following

---

4.  See 19 Cal. Jur. 851.

words: "Pay to the order of Globe Land Co. Julia Mackie." Thereafter and on or about July 13, 1920, said Globe Land Company transferred the note to the plaintiff by written indorsement on the back thereof in these words: "Without recourse, pay to the order of C. R. Nuetzel Globe Land Company by Harry B. Goodman, President & Manager." The indorsements above mentioned were for a valuable consideration, interest being unpaid, the plaintiff declared the note due and payable according to the terms thereof, demanded payment of the makers and, upon dishonor, caused the note to be protested and notice of protest and nonpayment given to the defendant. Thereafter this action was brought against the defendant to recover upon her indorsement. Upon the foregoing facts, the court rendered judgment for the defendant and plaintiff appeals.

Two questions are presented for consideration: 1. By indorsing the note in the form above set forth, did the defendant assume any liability to the indorsee of the Globe Land Company? And 2. Does section 726 of the Code of Civil Procedure prohibit the prosecution of this action?

[1] The note in question was secured by a mortgage under the terms of which said note was rendered nonnegotiable. The liability of the defendant depends upon the question of her intent, as evidenced by the form of indorsement used by her in the signing of the note to the Globe Land Company. In many of the states the defendant would be liable though the indorsement were in blank; in others, when the indorsement is in blank, the payee is not liable to a remote indorsee. In 8 C. J., under the title of Bills and Notes, sections 73, 74, and 75, the decisions of the various courts to be considered here, is thus epitomized: "The liability of a regular indorser of a non-negotiable note, to his indorsee, is the subject of much conflict in the decisions. While it would seem that a party indorsing a non-negotiable note cannot but intend to make himself liable in some capacity, it is often held that he is not liable, or, at least, not to the same extent, as is the indorser of a negotiable note." States are then named in which it is held that the indorser is a mere assignor and not liable to the indorsee on the contract of indorsement; following which, states are named in which it is held that an indorser is liable to the indorsee, either as indorser or as guarantor.

The text-writer then states: "However, all the courts agree that a payee of a non-negotiable note may become liable as an indorser by expressing such intent in his indorsement or otherwise, or by inducing the assignee to take it by an agreement to that effect."

The text-writer further states that in many of the states apparently no distinction is made in the decisions concerning irregular indorsers between instruments which are negotiable in their character and those which are not, the presumptive liability of the indorser being the same in either case.

[2] In many of the cases cited, the decision turns upon the ascertained intent of the indorser, as evidenced by the form of the indorsement. In 19 Cal. Jur. 885 the liability of an indorser on negotiable paper is thus stated: "Although it has been said that as between the immediate indorsee of the payee of a non-negotiable instrument, and the payee, the rights and liabilities of the parties are the same as in the case of a negotiable instrument, it seems clear, in general, that the payee who indorses a non-negotiable instrument is to be regarded as the mere assignor of the paper, and he is not liable to the indorsee of his indorsee where the indorsements are in blank or 'without recourse.' However, as in the case of other contracts, it is competent for the parties to make any contract they choose; and in case they clearly express intention to be bound in the same manner as the indorsers of negotiable instruments, the court will give effect to their intention." In 3 R. C. L. 876 the rule is thus stated: "Although an instrument as originally made is not negotiable for lack of words of negotiability, yet if it is indorsed to 'order' or 'bearer,' it becomes as between the indorser and subsequent holders a negotiable instrument and subject to the principles and usages of instruments of that character." And on page 1161 of the same volume, the text reads: "Non-negotiable instruments do not fall within the pale of the law merchant; and the law, therefore, writes no contract over a blank indorsement on a non-negotiable instrument as it does over a blank indorsement on a negotiable instrument. The reasonable presumption as to what was intended as an indorsement, in the absence of evidence showing a different intention, is that the indorser intended to do only that which was necessary

to transfer the title to the assignee; and the indorsement standing alone, creates no liability against him. Of course, if the indorser expressly agrees, or the form of the indorsement is such as to show an intention on the part of the indorser, that he shall be held liable for payment in case the maker defaults, such effect will be given to the indorsement. If the indorser of a non-negotiable note writes over his indorsement the words 'pay to B or order,' the note will become negotiable as between the indorser and B or any subsequent holder.'' To the same effect is the decision of the supreme court of Wisconsin in *Carruth* v. *Walker*, 8 Wis. 252 [76 Am. Dec. 235], where it was held that an indorsement ''pay to the order of Charles Albert'' on the back of a non-negotiable instrument rendered the indorser liable to remote indorsees, citing the cases of *Brenzer* v. *Wightman*, 7 Watts & S. (Pa.) 264; *Paterson* v. *Poindexter*, 6 Watts & S. (Pa.) 227; *Leidy* v. *Tammany*, 9 Watts & S. (Pa.) 352; *Seymour* v. *Van Slyck*, 8 Wend. (N. Y.) 404; *Dean* v. *Hall*, 17 Wend. (N. Y.) 214; Story on Promissory Notes, pars. 128, 129; Chitty on Bills, 219. In Ann. Cas. 1912B, 707, the annotator states the rule as follows: ''If the indorser expressly agrees or the form of the indorsement is such as to show an intention on the part of the indorser that he shall be held liable for payment in case the maker defaults, such effect will be given to the indorsement,'' citing *San Diego First National Bank* v. *Falkenhan*, 94 Cal. 141 [29 Pac. 866]; *Jossey* v. *Rushin*, 109 Ga. 319 [77 Am. St. Rep. 377, 34 S. E. 558]; *Jenness* v. *Barron*, 95 Me. 531 [50 Atl. 712]; *Kline* v. *Keiser*, 87 Pa. 485; *Shaffstall* v. *McDaniel*, 152 Pa. 598 [25 Atl. 576]; *Benton* v. *Gibson*, 1 Hill (S. C.), 56; *Wilson* v. *Mullen*, 3 McCord (S. C.), 236 (also a number of cases enunciating the same rule).

In the case of *First National Bank, etc.*, v. *Falkenhan*, 94 Cal. 141 [29 Pac. 866], the court was considering the effect of an indorsement of a non-negotiable note which contained a waiver of protest. It was there held that the words ''waiving protest'' indicated an intention on the part of the indorser to charge himself with liability. In *Haber* v. *Brown*, 101 Cal. 445 [35 Pac. 1035], while not necessary to a decision in that case, it is said: ''In respect to the immediate indorsee of the payee of a non-negotiable promissory note, the indorsement will ordinarily create the same liabil-

ities and obligations as the indorsement of a negotiable note," and then in considering indorsements made in blank, it is held that the indorsee ought not to be allowed to alter the terms of a writing by inserting anything above such blank indorsement which would give the indorsement the character of negotiability.

[3] In *Kendall* v. *Parker*, 103 Cal. 319 [42 Am. St. Rep. 117, 37 Pac. 401], the blank indorsement on a non-negotiable instrument was not sufficient to hold the payee liable to an indorsee of his indorsee. No question of intention of the indorser was present in that case. The indorsement was simply in blank, and, as stated in the annotations found in Ann. Cas. 1912B, page 5, it is uniformly held that in order to make a note negotiable, the words "to order" or "to bearer," or equivalent words must be used. The court in the Kendall case had before it no language in the indorsement indicating other or further intention on the part of the indorser than simply to assign his rights in the instrument to his immediate indorsee. Thus, the Kendall case neither extends nor limits the rule which is set forth by a number of the authorities holding the mere indorsement of a non-negotiable instrument by the payee will not render it negotiable, nor give the indorsee a cause of action against prior parties; although it will render such indorsee liable to his indorsee and will, if he use fit words in the indorsement, render him liable to all subsequent indorsees. (Randolph on Commercial Paper, sec. 17; Story on Promissory Notes, sec. 128; *Carruth* v. *Walker*, 8 Wis. 252 [76 Am. Dec. 235], and the cases there cited; *First Nat. Bank* v. *Falkenhan*, 94 Cal. 141 [29 Pac. 866]; *DeHass* v. *Dibert*, 70 Fed. 227 [30 L. R. A. 189].)

[4] In the recent case of *Quinn* v. *Rike*, 50 Cal. App. 243 [194 Pac. 761], it is held: "Where the payee of a non-negotiable promissory note assigns all his interests therein and by the assignment, which is evidenced by a writing on the back of the note, excuses presentment, demand and notice of protest, there is an implied intent to become liable as an indorser; and where such intent appears the liability of indorser follows." This case cites several of the cases which we have been considering and shows clearly that where any apt words are used such as give negotiability to an instrument, the payee will be held liable to an indorsee

of his indorsee. The rule which we have stated applies even though an intermediate indorsee may have limited his liability by using the words "without recourse." To meet this line of authorities, following which we must hold that the use of the words "pay to the order of" by the defendant evidenced the legal intention of the parties to fix liability on the defendant in favor of the plaintiff as an indorsee of her indorsee, the respondent calls our attention to section 3116 of the Civil Code, which reads: "The holder may convert a blank indorsement into a special indorsement by writing over the signature of the indorsee in blank any contract consistent with the character of the indorsement," and proceeds to argue that indorsees of the note in question would have the same right to write above a blank indorsement like words which we find used by the payee in this instance, and proceeds to deduce the conclusion therefrom that the words used in the indorsement evidence no intention on the part of the indorser. This argument, however, is not consistent with the cases which we have cited, which hold that upon a non-negotiable instrument the indorsee possesses no such right. The section referred to is confined specifically to the character of the contract upon which the indorsement is to be made, and if that contract is a negotiable instrument, then and in that case the holder thereof may insert the necessary words above a blank indorsement to make it a special indorsement, but, if it is not consistent with the character of the contract, no such right is given by the section. The case of *Quinn* v. *Ricke, supra,* was decided December 2, 1920, three years after the adoption of the code as amended, which we think is a sufficient answer to the respondent's contention.

[5] As to the right of the plaintiff to maintain this action, the answer turns upon whether section 726 of the Code of Civil Procedure has any application. The respondent cites the case of *Western Fuel Co.* v. *S. G. Leward Co.,* 190 Cal. 25 [210 Pac. 419], as authority for the statement that this action cannot be maintained. It is there said that under the code an independent action at law cannot be maintained for a debt, whatever the form, if secured by a mortgage, citing a number of California cases upholding this rule. While the principle of law set forth in the case just cited is firmly established in this state, its inapplicability,

however, is apparent. In the Western Fuel Co. case, the action was against the mortgagor and not against the indorser upon an independent contract. It has been several times held in this state that section 726 of the Code of Civil Procedure is for the benefit of a mortgagor and has no relevancy to independent contracts of other parties, though the action is based upon the same instrument, to wit, against a guarantor or indorser, etc. (*Jones* v. *Evans,* 6 Cal. App. 88 [91 Pac. 532]; *Martin* v. *Becker,* 169 Cal. 301 [Ann. Cas. 1916D, 171, 146 Pac. 665].)

This precise question was before the court in the case of *Murphy* v. *Hellman Commercial Trust & Savings Bank,* 43 Cal. App. 579 [185 Pac. 485], and we need not go further into this question than simply to call attention to the opinion of the court in that case, found on pages 582 and 583 of the volume cited, and the decisions on this question there referred to and considered. A consideration of this case shows clearly that section 726 of the Code of Civil Procedure has no application whatever where the action seeks to enforce the liability of an indorser.

It follows from what has been stated that the judgment of the trial court must be reversed, but, as the findings of the trial court show all the facts necessary to be found for the entry of judgment in favor of the plaintiff, save and except the amount of interest to be added to the principal of the note, it is hereby ordered that the judgment of the trial court is hereby reversed and the cause remanded to the trial court, with directions to ascertain, by calculating the amount of interest due, add the same to the principal, and to then enter judgment for the plaintiff.

Buck, J., *pro tem.,* and Finch, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 21, 1927.