[Crim. No. 5811. Second Dist., Div. One. Aug. 14, 1957.]

THE PEOPLE, Respondent, v. MILO BARRY, Appellant.

D. Wendell Reid for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged in Count I with the offense of offering false evidence (Pen. Code, § 132), and in Counts II and III with the crime of perjury (Pen. Code, § 118). Upon his arraignment, defendant made a motion to set aside the information under the provisions of section 995 of the Penal Code. Upon the denial of this motion, he pleaded not guilty as to all counts and later entered additional pleas of former jeopardy as to Counts I and II. Trial by jury was duly waived, at which time it was stipulated between the parties, "that this case may be submitted to the court upon the testimony taken at the preliminary hearing with the same force and effect as though the witnesses were called, sworn and testified under oath at this trial; that all stipulations entered into at the preliminary be entered into at this trial; that the exhibits received in evidence at the preliminary hearing be received in evidence at this trial as they were received at the preliminary; that where it states 'By reference,' that they be received by reference in this case; that the defendant waives the right to further cross-examination to be confronted by any witnesses that have testified against him; that both sides reserve the right to produce additional evidence." In response to an inquiry by the court as to whether there would be any additional evidence, all counsel answered in the negative. The court then announced, "I will hear the matter today." Following a recess, court reconvened and the trial judge announced, "Let the record show that the court has read the entire transcript of the preliminary hearing in this matter and all of the exhibits." Argument was waived, and the court announced its decision finding defendant not guilty as to Counts I and II and guilty of perjury as charged in

Count III. Upon inquiry by the district attorney as to whether the court found defendant not guilty on Counts I and II, "or did you find in favor of the defendant as to his pleas of jeopardy prior to conviction?", the court vacated its decision, and stated, "I will find that the defendant has been in jeopardy as to Counts 1 and 2." Motion for a new trial as to Count III was denied, as was an application for probation, and defendant was sentenced to state prison. From the judgment of conviction defendant prosecutes this appeal.

On this appeal we are concerned only with Count III of the information which charged that on November 7, 1955, there was pending and on trial in the Municipal Court of the Los Angeles Judicial District a certain proceeding entitled "An Order to Show Cause Re Contempt No. CO-5293 vs. Milo Barry, defendant." That this contempt action arose out of testimony and evidence offered by said defendant, MILO BARRY, in a civil action and trial heard in the Municipal Court of Los Angeles Judicial District entitled, *Barry* v. *Sillifant and Moorman*, No. 13283, heard on the 21st day of September, 1955.

"That the said defendant, MILO BARRY, did testify as a witness in said contempt action after being first duly and regularly sworn, in a case in which an oath may be by law administered, did willfully, knowingly, unlawfully and contrary to such oath, testify falsely to a material matter, to wit, that the Assignment to said MILO BARRY of the sales contract between GILBERT C. SILLIFANT and FRANK C. MOORMAN did contain, at the time FRANK C. MOORMAN signed the said Assignment to MILO BARRY, the words in typewriting, '*In case of non-payment, I guarantee to return the consideration,*' all of which the defendant, MILO BARRY, well knew was false and untrue."

From an examination of the record herein we consider the following a fair epitome of the factual background surrounding this prosecution. In April, 1950, Gilbert C. Sillifant bought some nursery stock from Frank C. Moorman. At that time they entered into a sales agreement for the nursery stock in which Mr. Sillifant was to pay Mr. Moorman $100 and then make additional payments. Subsequent to that time, in May, 1950, Mr. Moorman assigned the memorandum of this sale to the appellant.

It is the contention of the prosecution that when Mr. Moorman affixed his signature to this assignment agreement,

the document read: "This is to certify that I did transfer al_ rights, sell and assign them to Mr. Milo Barry of 14656 Roscoe Boulevard, Van Nuys, California. That all payments mentioned on the reverse side are to be paid from now to the said Milo Barry. In witness whereof, I hereby set my hands and seal this 1st day of May, 1950. Frank C. Moorman. (Notarial acknowledgment.)" That the language alleged in the information, "In case of non-payment, I guarantee to return the consideration" was not contained in the assignment at the time of its execution.

It appears that Mr. Sillifant, the purchaser of the nursery stock from Mr. Moorman under the foregoing installment sales agreement, defaulted in his payments thereunder, and in 1950 defendant herein filed an action against Mr. Sillifant. It appears from the record that what purported to be a copy of the Moorman assignment served upon Mr. Sillifant in that civil action did not include the foregoing phrase set forth in the information.

On September 21, 1955, defendant herein instituted an action against both Mr. Sillifant as maker of the foregoing installment sales contract and Mr. Moorman, as assignor thereof, to recover monies allegedly due on the contract. This action was filed in the Municipal Court of the Los Angeles Judicial District and trial thereof took place in Division 22 of said court with Honorable Charles B. MacCoy, Judge Presiding.

In that trial defendant took the witness stand, the oath was administered to him by Lamar M. Mitchell, a deputy clerk of said court, and defendant testified as a witness. He introduced into evidence an exhibit referred to and known as a "memorandum of sale and an assignment thereof." The assignment agreement from Mr. Sillifant to defendant herein was typed on the reverse side of the sales agreement. At the end of the first paragraph of the assignment appeared the phrase "In case of nonpayment I guarantee to return the consideration." During his cross-examination defendant herein testified that he typed in this phrase. He was asked if it were not true that after Mr. Moorman had signed it, he (the defendant) typed in the words, "In case of nonpayment, I guarantee to return the consideration," and he said, no, that was not so, that all of the words that were on there were typed before Moorman signed it. It was at this trial that defendant was confronted with the copy of the assignment he served on Mr. Sillifant in the 1950

civil action, and which did not contain the foregoing phrase as to "return of the consideration." He was asked if he had any explanation to make as to the absence of the phrase in question, and, according to the testimony of Judge MacCoy who presided at the civil trial, "He (defendant herein) said that he had done his own typing on that complaint and that while he was typing the third page and that part of it where the assignment was set up, that he was interrupted. He said, 'I have a store on Sepulveda Boulevard, and when a customer comes in, I wait on him, and after waiting on a customer and being interrupted and waiting on a customer I went back and took up with my typing and when I had that third page completed and read it over, I discovered that I had left out the phrase, "In case of nonpayment," so I retyped the third page and then when I come to put the pleadings together, I must have made a mistake in putting in the wrong third page on the copy that became the service copy, that the corrected third page was put into the court file before it was filed, but I must have—I did make a mistake in attaching the third page to the service copy of the erroneous—or wrong, incorrect typed third page.' "

At the conclusion of this trial had before him, Municipal Court Judge MacCoy filed an affidavit asking that the defendant be held in contempt of court. One of the grounds cited in the affidavit was that the defendant testified falsely at the September 21, 1955, civil trial when he stated that the words, "In case of nonpayment, I guarantee to return the consideration," were typed before Mr. Moorman signed the memorandum of sale.

On November 7, 1955, in Division 22 of the Municipal Court, the Honorable Morton L. Barker, Judge presiding, there was a hearing on an order to show cause in re contempt against the defendant.

The latter was sworn in as a witness by the clerk of the court, and he testified under oath that he did not alter the document in any way, and that he did not add the line, "In case of nonpayment, I guarantee to return the consideration," after Mr. Moorman signed it. Count III of the information, now before us, was framed upon the alleged falsity of the testimony just quoted.

As his first ground for reversal of the judgment appellant contends that he was once in jeopardy on the same charge of which he now stands convicted. In this regard he urges that he was cited before Municipal Court Judge Charles B.

MacCoy on three counts and that Count III of that action charged perjury, consisting of statements made under oath identical to the alleged perjurious statements set forth in the information herein. An examination of the municipal court records discloses without doubt that appellant herein was charged with contempt of the municipal court in Count III of the citation for giving testimony that the words ''In case of nonpayment I guarantee to return the consideration'' were typed into the assignment agreement at the same time as the other wording of that document and before Mr. Moorman, the assignor, signed it. Appellant herein was adjudged guilty of contempt in the municipal court and judgment was pronounced against him. There is no question that the charge of perjury in Count III of the information is predicated upon the same testimony above set forth, and given by appellant before Judge MacCoy on September 21, 1955, in a civil action, and was repeated in the contempt action heard before Municipal Court Judge Barker, on November 7, 1955.

It is urged by respondent that appellant at his trial in the court below interposed a plea of former jeopardy only as to Counts I and II, upon which he was acquitted, and did not enter such a plea as to Count III, upon which he was convicted and which is now before us on appeal. ■ This is true, as is also the fact that a plea of ''not guilty'' does not raise the issue of former jeopardy (Pen. Code, §§ 1016, 1020; *People* v. *Bennett,* 114 Cal. 56, 57, 58 [45 P. 1013] ; *In re Burns,* 78 Cal.App.2d 294, 301 [177 P.2d 649] ). ■■ True also is the contention of respondent that the defense of former jeopardy is not jurisdictional and may be waived (*People* v. *Mims,* 136 Cal.App.2d 828, 832, 833 [289 P.2d 539] ; *In re Harron,* 191 Cal. 457, 467, 468 [217 P. 728] ) ; and when the defense is not pleaded, it is waived (*People* v. *Stoll,* 143 Cal. 689, 696, 697 [77 P. 818] ; *People* v. *Newell,* 192 Cal. 659, 666, 667 [221 P. 622] ; *In re Harron, supra,* pp. 467, 468; *In re Burns, supra,* p. 301). Since appellant did enter a plea of former jeopardy as to Counts I and II, in the latter of which he was also accused of the crime of perjury based on the same testimony given in a municipal court trial on September 21, as forms the basis for the charge of perjury contained in Count III except only that it was allegedly given in the municipal court contempt hearing on November 7, 1955, we are disposed to consider appellant's claim of former jeopardy as to Count III herein on its merits.

Penal Code, section 687, provides that, ''No person can be

subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted.'' (See also Cal. Const., art. I, § 13.) ▇ At the hearing before Municipal Court Judge Barker on November 7, 1955, appellant was adjudged guilty of contempt for allegedly false statements made under oath at the civil trial on September 21, 1955. Appellant was not brought to trial under Count III for false testimony given at the trial of September 21, 1955, but for allegedly false testimony given by him at the hearing in re contempt on November 7, 1955. The statements made under oath resulting in the contempt charge and the statements made under oath at the contempt hearing were made two months apart. They were therefore, separate and distinct acts. The question then arises, was appellant ever previously in jeopardy for the testimony given before Judge Barker on November 7, 1955? We think not. Furthermore, a criminal act is not the less punishable as a crime because it is declared to be punishable as a contempt (Pen. Code, § 657). That this was the legislative intent is evidenced by the provisions of section 658 of the Penal Code, which read as follows:

"*Mitigation of punishment in certain cases.* When it appears, at the time of passing sentence upon a person convicted upon indictment, that such person has already paid a fine or suffered an imprisonment for the act of which he stands convicted, under an order adjudging it a contempt, the court authorized to pass sentence may mitigate the punishment to be imposed, in its discretion.'' ▇ Neither is the defense of former jeopardy available on the ground that the same act is punishable both as to contempt of court and as a crime. As was said by our Supreme Court in *Ex parte Acock,* 84 Cal. 50, 55 [23 P. 1029] : ". . . The fact that the petitioner may be prosecuted in criminal and civil actions does not prevent a prosecution for contempt. A party may be liable civilly and criminally for an assault upon an officer in open court, and at the same time may be punished for the indignity laid upon the court.'' (See also *In re Morris,* 194 Cal. 63, 72 [227 P. 914].) In the instant case, appellant was punished for a contempt. And, even if the perjury charge involved herein had been based upon the same act as that punished in the contempt proceedings it would not, under the foregoing authorities, have placed him in double jeopardy.

Appellant's next contention is that the information did

not properly charge the offense of perjury in that it was not shown therein that the person administering the oath had authority so to do. This claim is without merit. It is alleged in Count III of the information that appellant testified "as a witness in the aforesaid contempt action after being first duly and regularly sworn in a case in which an oath may be by law administered." ▆ As was said by this court in *People* v. *Pustau*, 39 Cal.App.2d 407, 413 [103 P.2d 224]: "Where, as here the indictment sets out that the defendant under oath knowingly gave certain false testimony; that the testimony so given was material, and then sets forth in detail such testimony, and points out wherein it was false and untrue, the indictment is sufficient, because such allegations advise the defendant of the charge against him in such a manner as to enable him to properly prepare a defense thereto. (Citing cases.)" ▆ The sufficiency of an information must be tested in the light of the averments therein contained. The pleading here in question conforms to the test above set forth.

▆ A further answer may be made to appellant's attack upon the sufficiency of the information by the oft repeated statement that the purpose of an indictment or information is simply to inform the accused of the charge which he must meet at the trial (Pen. Code, § 952). In *People* v. *Curtis*, 36 Cal.App.2d 306, 317 [98 P.2d 228], this court stated: "As was said in *People* v. *Beesly*, 119 Cal.App. 82 [6 P.2d 114, 970]: 'There, in a nutshell, is stated the principle of our present simplified form of pleading a criminal offense—the accused is entitled to notice of the offense of which he is charged but not to the particular circumstances thereof, . . .' Where this information came solely from the indictment, as at common law, more particularity was required, but under our system, the law now provides, as part of the accusatory procedure, that in every criminal case the accused is entitled to a transcript of the testimony given before the grand jury or the committing magistrate, as the case may be. (Citing cases.)" (See also *People* v. *Kriton*, 73 Cal.App.2d 184, 189, 190 [166 P.2d 45].)

▆ It is now established law that the sufficiency of an indictment or information is not to be tested by the rigorous rules of the common law, nor by the rules prevailing in this state prior to the 1927 and 1929 amendments to our statutes governing pleadings in criminal cases. The pleading here under attack satisfies the requirements of section 966 of the

Penal Code which governs the sufficiency of pleadings in perjury and subornation of perjury cases. Reference by appellant to the transcript of the testimony adduced at the preliminary examination would apprise him of the fact that the oath here in question was administered to him by Lamar M. Mitchell, clerk of the court in which appellant was testifying. ▮ That he was not prejudiced by the form of the information concerning Count III thereof is manifest since appellant did not demur thereto under sections 1003 and 1004 of the Penal Code. This in itself would constitute a waiver of a challenge to the sufficiency of the pleading which appellant now raises for the first time on appeal (*People* v. *Waid,* 127 Cal.App.2d 614, 616 [274 P.2d 217] ; *People* v. *Schoeller,* 96 Cal.App.2d 61, 62 [214 P.2d 565]). ▮ Appellant's claim that he raised the objection by his motion under Penal Code, section 995 is without merit because neither of the grounds specified in that section are applicable to the objection now urged in the case at bar. ▮ Appellant is also confronted by the provisions of section 1404 of the Penal Code, reading as follows:

"WHEN NOT MATERIAL. Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

In the case now engaging our attention, in the light of what we have heretofore said, we cannot perceive wherein appellant was prejudiced by the failure to allege in the information the name and powers of the person who administered the oath to him. He was adequately advised of the charge which he was required to meet at his trial (*People* v. *Curtis, supra,* p. 317).

Appellant relies heavily upon the case of *People* v. *Cohen,* 118 Cal. 74 [50 P. 20], to support the proposition that the information must show that the one who administered the oath had authority so to do in the particular case. However, as was stated by the court in *People* v. *Ennis,* 137 Cal. 263, 265 [70 P. 84] : ". . . All that was decided in *People* v. *Cohen,* 118 Cal. 74 [50 P. 20], was that where a superior judge chooses to hold a preliminary examination he cannot use the services of a clerk to swear the witnesses." Furthermore, the Cohen case was decided in 1897, some 30 years prior to the 1927 and 1929 amendments to our statutes relating to pleadings in criminal cases, and to which we have heretofore

adverted. We find nothing in the cases of *People* v. *Dunlap,* 113 Cal. 72 [45 P. 183], and *People* v. *Macken,* 32 Cal.App. 2d 31 [89 P.2d 173], which militates against what we have herein stated.

 Appellant's next assignment of error is that the submission of the case on the record of the preliminary examination was contrary to law and a denial of due process is unavailing. Appellant insists that such procedure permits the court to have before it the inadmissible as well as the legally admissible evidence and contends that, "In the instant case, almost the entire record of the Preliminary Hearing is comprised of inadmissible evidence. (See Reporter's Transcript, entire copy of preliminary examination.)" His claims with regard to the manner in which this cause was submitted to the trial judge and the constitutionality and legality thereof were decided adversely to him in the cases of *People* v. *Wallin,* 34 Cal.2d 777, 780-782 [215 P.2d 1]; *People* v. *Cohen,* 94 Cal. App.2d 451, 456, 457 [210 P.2d 911]; *People* v. *Brown,* 145 Cal.App.2d 778, 780 [303 P.2d 68]; *People* v. *Graves,* 84 Cal.App.2d 531, 535 [191 P.2d 32]; *People* v. *Young,* 100 Cal. App.2d 488, 489, 490 [224 P.2d 46]).

Appellant's claim that under the procedure agreed to in the case at bar he was denied the right to offer evidence in his own behalf is refuted by the record herein which shows that the stipulation to submit the cause on the transcript of the preliminary hearing contains the provision that he reserved the right "to produce additional evidence" and again, when the court inquired, "Will there be additional testimony," appellant's counsel in his presence, answered, "No testimony, Your Honor." Thus, opportunity was afforded appellant to produce evidence in his behalf but he declined so to do.

 Appellant earnestly urges that the trial judge did not have the entire record before him and could not possibly have read and considered it together with the eight exhibits, including two municipal court files, within the time elapsing from submission of the cause on the preliminary transcript to the time of rendition of the decision. It is true, as pointed out by appellant, that the preliminary examination transcript contained some 60 pages of testimony and that the exhibits included several documents introduced in the municipal court civil trial and at the contempt hearing. It is also true, as appellant states, that the record herein shows that court convened on July 20, 1956, at 9:30 a. m. and called appel-

lant's case for trial. That the foregoing stipulation as to submission of the cause was entered into; that, according to the reporter's transcript, "Whereupon, other matters were handled by the court on the court's calendar which did not relate to this particular (appellant's) case." That thereupon a recess was taken and that court reconvened at 10 a. m. when appellant's case was again called and the court announced, "Let the record show that the court has read the entire transcript of the preliminary hearing in this matter and all of the exhibits." What appellant actually contends, as set forth in his closing brief, is that, "It is not contended that any particular amount of time, more or less would amount to error merely because of the length of such time; the point made by appellant is that all reasonable and reasonably intelligent men *must* recognize the fact that no normal individual, whether he be judge or otherwise, could possibly read and consider the record in this case and the complicated exhibits therein within the space of thirty minutes, or less as the record shows, and particularly that he *could not* have read or even seen the six exhibits which were never in his possession."

As to appellant's contention that it was impossible for a trial judge to read the 60-page transcript and the exhibits in less than thirty minutes, we could dismiss it by reliance upon the disputable presumption "That official duty has been regularly performed" (Code Civ. Proc., § 1963, subd. 15) because there is not one word in the record before us to contradict that presumption. On the contrary, the record shows that the trial judge did read the entire preliminary examination transcript and all the exhibits, and at no time was the truth of the trial judge's statement in that regard controverted. To us it seems manifestly unfair to a trial judge for an accused and his counsel to sit silently by at the time a decision is rendered and on motion for a new trial, without mentioning a charge as serious as the one here presented, and then, for the first time on appeal, when the trial judge cannot be heard, to accuse him of finding a defendant guilty of a felony and sentencing him to the penitentiary without reading the testimony upon which such conviction and sentence is predicated.

In justice to the trial judge, we cannot refrain from saying that a complete refutation of appellant's attempted stricture is reflected in the complete familiarity with the issues presented by the information and framed by the evidence

which the trial judge exhibited. He differentiated between the three counts in the indictment, acquitted appellant on Counts I and II, and gave his reasons, based on the evidentiary features of the case, as to why he was convinced beyond a reasonable doubt, of appellant's guilt under Count III. There is nothing in the record to substantiate appellant's contention, and with all due respect to the time element, in light of the foregoing, it presents no ground for ignoring the presumption above referred to.

The next three grounds urged by appellant for a reversal may be considered together. Was the evidence sufficient, as a matter of law, to sustain the conviction? We are persuaded it was. To establish the crime of perjury it must be proven that an accused swears, affirms, declares, deposes or certifies that he will testify, declare, depose or certify truly before a competent tribunal, officer, or person; that such oath was taken in a case in which an oath may by law be administered; and finally, that wilfully and contrary to such oath, the accused stated as true a material matter which he knew to be false (Pen. Code, § 118). It is also true, as contended by appellant, that perjury must be proved by the testimony of two witnesses or one witness and corroborating circumstances (Code Civ. Proc., § 1968; Pen. Code, § 1103a). As was said in *People* v. *Casanova*, 54 Cal.App. 439, 442 [202 P. 45]: "The statute respecting the *quantum* of evidence necessary in perjury cases will be satisfied if there be the testimony of one witness to facts that are absolutely incompatible with the innocence of the accused, corroborated by circumstances which, of themselves and independently of such directly inculpatory evidence, tend, with a reasonable degree of certitude, to show that the accused is guilty as charged." Every court has the power to administer oaths in an action or proceeding therein (Code Civ. Proc., § 128, subd. 7), and under section 2093 of the Code of Civil Procedure every clerk of any court has power to administer oaths. The clerk of a municipal court, acting as such, has the power to administer oaths (*People* v. *Malowitz*, 133 Cal.App. 250, 256, 257 [24 P.2d 177]). With the foregoing rules in mind we find in the record testimony that Lamar M. Mitchell, Clerk of the Los Angeles Judicial District Municipal Court, in Division 22 thereof, administered an oath to appellant as a witness in a jury trial heard in Division 22 before the Honorable Judge Charles B. MacCoy on September 21, 1955, and at a hearing on an order to show cause

in re contempt against the appellant before the Honorable Judge Morton L. Barker, who was then sitting in Division 22.

Count III (with which we are now concerned) arose from statements made by the appellant at the last named contempt hearing of November 7, 1955.

The contempt proceeding was thus pending in Division 22 of the Municipal Court before the Honorable Judge Morton L. Barker and the court therefore had the power to administer oaths. (Code Civ. Proc., § 128, subd. 7.)

The clerk of that court had the power to administer oaths under section 2093 of the Code of Civil Procedure; the clerk did, in fact, administer the oath to the appellant; therefore, the appellant testified under oath before a competent person in the case in which an oath may by law be administered.

At the contempt hearing on November 7, 1955, the appellant testified under oath that he did not alter the Moorman assignment in any way. He further testified that he typed all the words appearing above Mr. Moorman's signature and that he did not add the line, "In case of nonpayment, I guarantee to return the consideration" after Mr. Moorman had signed the document; that this sentence was put on the document before Mr. Moorman's signature thereto.

The latter testified that when he signed the agreement, the words, "In case of nonpayment, I guarantee to return the consideration," were not on the agreement.

Don Mire, an expert in handwriting and in the interpretation of questioned documents testified that in his opinion these words were not typed at the same time as the rest of the document, and that these words were added two years after the other parts of the document had been typed.

Mr. Moorman's signature was notarized the same day as the date recited in the original typed document, May 1, 1950. Mr. Mire testified that in his opinion the words, "In case of nonpayment, I guarantee to return the consideration," were typed in 1952. This expert witness explained that the reason he had concluded that the typing was placed on there in about 1952 instead of 1950 was because he had examined another document bearing a date of 1952 which appeared to him to be in comparable typing form or format. The witness also testified as to the care taken by the person who typed in the questioned phrase to get the alignment so that it would correspond with the remainder of the document, vertically and horizontally.

The copy of the complaint filed in the civil action in 1950

against Mr. Sillifant to collect on the note he gave to Mr. Moorman, and which copy was served on Mr. Sillifant, was introduced into evidence and the agreement thereto annexed did not contain the words "In case of nonpayment, I guarantee to return the consideration." Appellant's explanation of this variance has been heretofore set forth in the factual narrative of the background of this prosecution. The verity of appellant's explanation, and the evidentiary conflict thereby created, was of course a question of fact for the trial judge to determine.

Appellant admits typing the phrase "in case of nonpayment, I guarantee to return the consideration" upon the assignment agreement and the perjury of which he was convicted was his false statement that he typed it thereon prior to execution of the document by Mr. Moorman. The question of guilty knowledge was one of fact for the trial judge to determine (*People* v. *Darcy*, 59 Cal.App.2d 342, 348 [139 P.2d 118]; *People* v. *Talbot*, 220 Cal. 3, 8 [28 P.2d 1057]; *People* v. *Applegate*, 91 Cal.App.2d 163, 176 [204 P.2d 689]; *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 788]). We are satisfied that upon the foregoing testimony the court was justified in concluding that appellant made such statement under oath with guilty knowledge of its falsity.

With reference to section 1103a of the Penal Code which provides that perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances, it may be said that this declaration of the code clearly means that where the prosecution relies upon the direct evidence of a single witness that testimony must be corroborated by substantial evidence to a contrary state of facts from that sworn to by appellant at the contempt hearing on November 7, 1955. In the instant case, the positive and direct evidence of one witness as to the *corpus delicti* demanded by the statute was furnished by Mr. Moorman and we are persuaded that the testimony of the expert witness Mr. Mire, sufficiently established the corroborating circumstances within the meaning of Penal Code, section 1103a, as to the falsity of the testimony given by the appellant. The testimony of Mr. Moorman established facts that are absolutely incompatible with the innocence of the accused, while the expert testimony of Mr. Mire furnished the circumstances which of themselves and independently of Mr. Moorman's directly inculpatory evidence, tended, with a reasonable degree of certitude to show the guilt of appellant

as charged. There is also the testimony of August A. Ariey, Jr., Deputy Los Angeles County Public Defender, that he was present at the contempt proceedings and heard appellant testify that he typed the document in queston and did not alter the same in any way by adding the foregoing questioned phrase after Mr. Moorman signed the same. To the same effect is the testimony of William J. McKethan, official reporter of the Municipal Court of the Los Angeles Judicial District, and Lamar M. Mitchell, a clerk of the same court.

Was the testimony given by appellant material? ▮▮▮ The ordinary test of materiality is whether the testimony given could have probably influenced the tribunal before which the cause was being tried, upon the issue involved therein. ▮▮▮ At the November 7, 1955, proceedings before Judge Barker, appellant was charged in three counts with contempt. One of these charges contained in Count III of the contempt citation was that on September 21, 1955, during a trial of his lawsuit against Messrs. Sillifant and Moorman for the recovery of money, appellant was sworn as a witness, and as such witness, he offered in evidence the foregoing memorandum of sale and the assignment or endorsement of transfer thereof. That on cross-examination of appellant herein he was asked: ''Is it not true that these words 'In case of nonpayment, I guarantee to return the consideration' were not upon or a part of that assignment at the time Frank C. Moorman signed it, and isn't it true that you typed those words on this exhibit at a later time?'' and to that question the defendant Barry answered: ''No, that is not true. I typed those words in when I typed the rest of the assignment, and they were there when Moorman signed it.'' The third count of the contempt citation then recited that ''In truth and in fact the said words 'In case of nonpayment, I guarantee (sic) to return the consideration' were not upon the said instrument when it was signed by Moorman,''. The citation then states that Milo Barry (appellant herein) was being charged with contempt for so testifying; that his testimony was false; that he knew it to be false; that it was material to issues in the action, and that it was designed to mislead the court and to impede the cause of justice.

Appellant attacks the credibility of Mr. Moorman's testimony and characterizes the witness as being ''. . . very uncertain about many material facts with regard to the transaction with Barry involving this Assignment, except to repeat the testimony in his direct examination that the said words

as aforesaid were not on the document when he signed it. Most of his testimony was, 'I don't believe so,' or 'I believe so.' "

That reviewing courts are obviously in no position to determine the credibility of witnesses or to weigh their testimony has often been repeated by the appellate courts of this state. The trier of facts is the *exclusive* judge of the credibility of witnesses (Code Civ. Proc., § 1847), and is also the arbiter of the *effect* or *value* of evidence, except in those cases where it is declared by law that it shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061). It therefore follows that in the case at bar, the trial judge was authorized, if he conscientiously felt warranted in so doing, after full and fair consideration thereof to accept the testimony of Mr. Moorman and to disbelieve that of appellant, however weak in places the former's testimony may have been made to appear (*People* v. *Newland, supra,* p. 681).

Appellant's contention that as to the testimony of the expert witness Don Mire, ". . . but neither in direct or cross-examination did this witness ever say, or was he ever asked for an opinion as to whether or not the signature of Frank C. Moorman was placed on this document before or after *all of the typewriting was placed thereon.*" is not sustained by the record, which reflects that Mr. Mire testified:

"A. It is my definite conclusion that the typing, 'In case of nonpayment, I guarantee to return the consideration,' and the double typed 'A' in the word 'Are,' the double typed 'a' in the word, 'Barry,' was not typed on there at the time of the other typing."

And in answer to the question, "Would you tell me—— could you determine approximately how much later it was typed on there, sir?" the witness replied, "In examining certain other exhibits which was given to me, I would say it was approximately two years later . . ."

It is therefore manifest that at the contempt hearing on November 7, 1955, one of the issues was whether the foregoing statement made by appellant at the civil trial on September 21, 1955, that he did not alter the assignment agreement after it had been signed, was false. In *People* v. *Phillips,* 56 Cal.App. 291, 293 [205 P. 40], it was held that "the matter sworn to need not be directly and immediately material. It is sufficient if it be so connected with the fact directly in issue as to have a legitimate tendency to prove or disprove such fact by giving weight or probability to the

testimony of a witness testifying thereto, or otherwise 22 Am. and Eng. Encyc. of Law, 687 . . .'' That "the false testimony need not be directly material. It is sufficient if it is circumstantially material, the degree of materiality being unimportant" was the holding in *People* v. *Albert,* 91 Cal. App. 774, 776 [267 P. 587].

The statement made by appellant was also material to the civil action upon which the contempt proceedings were based. Said civil action was instituted by appellant against Mr. Moorman as an assignor of a sales agreement. At the trial it was the contention of Mr. Moorman that the agreement read "This is to certify that I (Mr. Moorman) did transfer al (sic) rights, sell and assign them" to appellant. In *Mathes* v. *Bangs,* 128 Cal.App. 171, 172, 173 [16 P.2d 749], it was held that such an assignment in a negotiable note was equivalent to an indorsement "without recourse." Section 3119 of the Civil Code states that the addition of the words "without recourse" or any other words of similar import creates a qualified indorsement.

Section 3146 of the Civil Code lists the warranties created by a qualified indorsement. ▮ By a qualified indorsement, the indorser or assignor warrants that he has no knowledge of any fact which would render the instrument valueless, but he does not warrant that the obligor will pay.

In *First Nat. Bank* v. *Falkenhan,* 94 Cal. 141, 145 [29 P. 866], the court said that an assignor of a nonnegotiable instrument had the same liability to the assignee as that of the assignor of a negotiable instrument. (See also *Nuetzel* v. *Mackie,* 80 Cal.App. 768, 771 [253 P. 166].) ▮ The assignment of a nonnegotiable instrument does not carry with it a guarantee that the obligor will pay. Accordingly, whether the agreement was negotiable or nonnegotiable, Mr. Moorman had no liability thereunder to appellant for the mere failure of the obligor (Mr. Sillifant) to pay. ▮ Therefore, the issue of whether or not there were, at the time Mr. Moorman executed the assignment, the added words of guarantee of payment, presented a material issue in the civil trial. To us, it is difficult to perceive how there can be the slightest question of the materiality of testimony by appellant that the words "In case of nonpayment, I guarantee to return the consideration" were contained in the assignment at the time Mr. Moorman signed it.

▮ Finally, appellant asserts that he was compelled to testify against himself at the contempt hearing on November 7,

1955, and upon which Count III of the information herein was founded. That this was in violation of his constitutional rights and that because he did not request to be a witness, appellant was not competent to testify to such (Pen. Code, §§ 1323, 688; Cal. Const., art. I, § 13). Appellant asserts that because of such incompetency, ". . . his testimony, however false it may have been, could not be the subject of this prosecution for Perjury, for it is ab initio null and void and not material to the case." ▇▇ ▇▇ Appellant's contention that unless an accused requests the privilege of testifying, he is incompetent as a witness, and that the prosecution has no legal right to ask him to testify is well established (*People v. Talle*, 111 Cal.App.2d 650, 664 [245 P.2d 633]). In support of his claim in this regard, appellant relies upon a partial transcript of testimony adduced at the contempt proceedings before Judge Barker on November 7, 1955 (People's Exhibit No. 7 at the perjury trial). The partial transcript reveals that at the contempt hearing the court stated: "All right. Will you take the stand then, Mr. Barry," whereupon appellant was sworn as a witness, testified and was cross-examined by Deputy City Attorney Frank Rothman. ▇▇ However, no objection was made at the contempt hearing. Neither was any objection interposed at the trial of the instant action. If at his trial on the perjury charge appellant had objected to the introduction of his statement made at the contempt hearing on the ground now urged, the prosecution would have been afforded an opportunity to introduce the portion of the contempt hearing transcript which contained the proceedings had preceding those shown in the partial transcript put into evidence in the case at bar, thereby being afforded an opportunity to show, if such was the case, that appellant had requested the opportunity to be heard as a witness in his own behalf at the contempt proceeding, and that the judge presiding thereat called appellant to the stand at the appropriate time following the latter's request. Again, in this case, we are confronted with a situation wherein the record on appeal does not indicate whether appellant's testimony in his own behalf was given upon suggestion by the court or at appellant's request. We are faced with the further fact that at the trial no objection was interposed to appellant's testimony given at the contempt hearing, on the ground that he was incompetent to testify as a witness for the reasons now urged for the first time on appeal. ". . . the rule is settled by decisions of this court, found in nearly every volume of

our reports, that on appeal all intendments are in favor of the regularity of the action of the court below, and that error will never be presumed, but must affirmatively appear" (*People* v. *Douglass,* 100 Cal. 1, 4 [34 P. 490]). Such being the rule on appeal, there must be an *affirmative* showing of error to overcome the presumption to the contrary. In the absence of such a showing, we must presume that the contempt trial was regularly conducted in all respects (*People* v. *Chessman,* 35 Cal.2d 455, 462 [218 P.2d 769, 19 A.L.R.2d 1084]; *People* v. *Coahran,* 104 Cal.App.2d Supp. 861, 863 [231 P.2d 592]). This is especially true when, as here, no objection was interposed at the trial of appellant in the court below.

The judgment is affirmed.

Doran J., and Fourt, J., concurred.

A petition for a rehearing was denied September 11, 1957, and appellant's petition for a hearing by the Supreme Court was denied October 30, 1957.