[Crim. No. 3421. Third Dist. June 27, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JACK WALLACE GILBERT, Defendant and Appellant.

Richard S. Simmons, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—In this appeal from a conviction by a jury for perjury, the contentions are: (1) a defective information failing to state a public offense, (2) insufficiency of the evidence to support the verdict, and (3) that inadmissible evidence admitted, although later stricken by the court, was so prejudicial its effect upon the jury could not be cured.

The information alleged *inter alia* that defendant on May 29, 1962, at Butte County, California, did "wrongfully, wilfully, and feloniously in the Justice Court of the Chico Judicial District, County of Butte, State of California, commit perjury in testifying falsely under oath as to matters material to an action entitled *'The People of the State of California* vs. *Jack W. Gilbert'* ...."

It is contended that Penal Code section 966 covering the pleading of perjury was not complied with because the

information does not recite that the court where the alleged perjury is said to have been committed "had authority to administer" the oath.[1]

It has been held, however, that the purpose of the allegations of an information or indictment is to advise the defendant of the charge against him sufficiently to enable him to prepare his defense thereto and, therefore, a statement of the title of the court and controversy where the alleged false testimony was given, coupled with proper allegations of the falsity of the matter on which the perjury is assigned, is sufficient to advise him as to the identity of the officer administering the oath and the fact of his authority. (*People* v. *Barry*, 153 Cal.App.2d 193 [314 P.2d 531].) The facts of *Barry* were quite similar to the facts here in that the information charged that defendant had testified falsely in a preliminary examination on an order to show cause for contempt in the Municipal Court of the Los Angeles Judicial District in a proceeding named, but did not specify the name of the judge, or clerk administering the oath. The court stated on page 203:

"Reference by appellant to the transcript of the testimony adduced at the preliminary examination would apprise him of the fact that the oath here in question was administered to him by Lamar M. Mitchell, clerk of the court in which appellant was testifying."

The case at bench differs from *Barry* in that the proceedings of the justice court were not reported or transcribed. Reference by Gilbert to the court named in the information and to its minutes, however, would have disclosed the name of the clerk and the fact that he had administered the oath.

The defect, if any, moreover, was waived by failure to demur under Penal Code sections 1003 and 1004. (*People* v. *Barry, supra.*)

The evidence is sufficient to support conviction of perjury.

---

[1]Penal Code section 966 states:

"In an accusatory pleading for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed, and in what court and before whom the oath alleged to be false was taken, and that the court, or the person before whom it was taken, had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; but the accusatory pleading need not set forth the pleadings, records, or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed."

At approximately 2 a.m., April 28, 1962, defendant, Gilbert, a minor, purchased several cartons of beer at a Chico liquor store. As he left the store, he was observed by two patrolling police officers, Olson and Adams, one of whom got out of the car, questioned Gilbert, who told the officer his name was Robert G. Rodrequiz and that he was 23 years old. He was allowed to continue on his way. The two officers followed him, but when they drove around the block and lost sight of him briefly, Gilbert was able to and did, hide the beer behind a tree. Gilbert then met a Chevrolet automobile and talked with its occupants. Adams and Olson followed this car when it drove away, radioing to another officer, Thomas Payne, describing Gilbert, and requesting Payne to drive to the area and follow Gilbert. Payne did so and, seeing Gilbert standing beside a tree, got out of his car and questioned him. This time Gilbert gave his true name, denying he had previously been stopped by Adams and Olson or that he had given his name as Rodrequiz. Later a search of the area where Payne had questioned Gilbert was made by the police. The cartons of beer were found; also recovered was an "I-D" card made out to Rodrequiz.

Gilbert was tried in the Justice Court of the Chico Judicial District upon a charge of possession by a minor of an alcoholic beverage. At the trial he testified he was not the person who purchased the beer nor the person who, with the beer in his possession, had been questioned by Officer Adams and who had identified himself as Rodrequiz, stating his age as 23. (This is the testimony constituting the basis of the perjury charge.) Robert Rodrequiz also testified at the justice court trial. He stated he was the one who had made the purchase and whom Officer Adams had questioned. (This was the alleged perjury with which Rodrequiz was charged.)

Thereafter the district attorney filed an information charging Gilbert, and another information charging Rodrequiz, with perjury as aforesaid. The cases were consolidated for trial. The jury returned guilty verdicts against both. Gilbert alone has appealed.

The only contention by Gilbert regarding the insufficiency of the evidence which merits discussion is that the prosecution failed to prove that an oath had been administered to Gilbert in the justice court trial and that this

was an omission fatal to the proof of the commission of the offense of perjury. It is, of course, axiomatic that proof of the administering of an oath (or affirmation) is indispensble since perjury by definition is a false material statement by a person who, before giving the statement, has taken an oath he will testify truly. (Pen. Code, § 118.) The Attorney General, conceding this, argues that there is such proof here.

Three witnesses, Officers Adams and Olson, and Helen Rice, the criminal clerk of the Chico Justice Court, testified for the People. Mrs. Rice stated that Gilbert had "testified" (outlining his story as she recalled it). Officer Olson also affirmed that he had overheard Gilbert's "testimony" given at the justice court trial. He stated that Gilbert had testified he "hadn't seen either Officer Adams or myself [Olson] that night until he was brought to the location" at Memorial Way and Esplanade by Officer Payne; that this testimony was untrue. Officer Adams, who also was present at the trial in the justice court stated Gilbert had "testified." (This officer was less clear as to the substance of Gilbert's testimony.)

The statutory definition of the word "testify" embraces every mode of oral statement made under oath or affirmation. (Pen. Code, § 7; Civ. Code, § 14; Code Civ. Proc., § 17.)

Black's Law Dictionary (4th ed. 1951) page 1646, defines the word "testimony" as being "Evidence given by a competent witness, under oath or affirmation; . . . [cases cited]."

In *Shepherd* v. *Board of Supervisors*, 137 Cal.App. 421, 427 [30 P.2d 578], "testimony" has been defined as being "the statement made by a witness *under oath*."

To "testify" is to make a solemn declaration under oath or affirmation for establishing proof of some fact to the court. (*Garland* v. *State*, 237 Ind. 528 [146 N.E. 413, 414]; *Edelstein* v. *United States*, 149 F. 636, 640 [79 C.C.A. 328, 9 L.R.A.N.S. 236].)

Code of Civil Procedure, section 1846, provides in part: "A witness can be heard only *upon oath or affirmation,* . . ." (Italics supplied.)

We hold, therefore, that the use of the words "testify" and "testimony" by the witnesses in relating to that which Gilbert had related on the witness stand at the justice court trial must be construed as use of the words in their ordinary and accepted meaning which, since it necessarily includes the connotation of a previously administered oath, satisfies

the requirement of proof. This holding is fortified here since in the trial court proof of an oath-taking was assumed by both sides and unquestioned. In fact, defense counsel in arguing an objection to the court regarding a question put to Officer Olson by the district attorney characterized the witness's earlier testimony as follows: "He has said that both these boys testified as to material matters *while under oath.*" (Italics supplied.) Under the circumstances the interests of justice are not served by accepting on appeal a first attempt to define "testify" as a word not necessarily including the administering of an oath (or affirmation).

■ Appellant's third contention arises from the following:

Evidence was first admitted, later stricken by the court, relating to a conversation held before Gilbert was arrested on the perjury charge. Gilbert and an undercover agent, Calvin Payne, had participated in the conversation. It was in two phases: one, at Gilbert's home, and the second, at the home of one Joe Ballejos.

During both parts of the conversation Payne was equipped with a Fargo electronic intercepting and transmitting device and two police officers, Sergeants Brooks and Turner, located within broadcasting range, were equipped with receiving sets and a tape recorder. A recording of the conversation had been made but was imperfect and was not played back to the jury.

Payne and the two police officers were called as prosecution witnesses. Their recollection of what Gilbert said during the conversation as reflected by their testimony, is to some extent conflicting. There was no disagreement, however, that Gilbert had said he at one time feared perjury charges would be brought against him, but that apparently these had been dropped since he had not been arrested. One of the officers also testified that Gilbert had admitted having lied.

The point made by appellant on appeal is that the witnesses to the conversation had not shown that Gilbert admitted his "lie" to have been in testimony at the justice court trial. At the trial, after admitting the officers' testimony, the court granted defense counsel's motion to strike it on that ground and admonished the jury to disregard it.

The court erred in rejecting the testimony. Before any of it had been given, the first of the witnesses, Calvin Payne

(the undercover agent), had testified: "Q. BY MR. BLACK-STOCK: Now, can you recall in this conversation if any reference was made to a certain hearing that was had on, I believe, May the 29th in Chico Justice Court? A. BY THE WITNESS: Yes. Q. What conversation was had in regards to that hearing? A. The defendant said that for a while he thought he was going to get a perjury charge filed against him. He guessed he didn't because they hadn't filed it."

The witness thereafter related such conversation. It is true that Sergeant Brooks disagreed with Calvin Payne. His recollection was that the justice court trial had been mentioned during the second phase of the conversation. He testified: "THE COURT: I think you asked, was anything said by Mr. Gilbert concerning a hearing at Chico. MR. BLACK-STOCK: Yes, Your Honor. The hearing in Chico Justice Court on or about the 29th. A. BY THE WITNESS: Well, at this particular time, at the residence of Jack Gilbert, there was no mention of any hearing; thee [sic] was discussion of going to the residence of Roy Ballijos on Elm Street. Q. When, if any, conversation was there in reference to this hearing? A. After the two subjects went to Roy Ballijos' on Elm Street, there was another conversation there, and during this conversation—— . . ." This merely created a conflict for the jury to resolve as to when reference to the jury trial had been a part of the conversation. The admissions were sufficiently identified with the justice court trial. If defense counsel had been concerned as to whether Gilbert's reference to perjury and the fact he had lied related to some occasion other than at the justice court trial, cross-examination would have developed it.

The striking of proper testimony cannot now be urged as prejudicial error. Appellant was actually benefited. "Defendant cannot claim prejudice by reason of an erroneous ruling of the court which is in his favor." *(People* v. *Gonzales,* 87 Cal.App.2d 867, 878 [198 P.2d 81].)

Judgment is affirmed.

Schottky, J., and Friedman, J., concurred.